# Green *v.* The State.

*Indictment for Murder.*

1. *Motion to quash venire.*—The name of a person summoned by the sheriff, but not drawn as a juror, is properly omitted from the venire served on the defendant.

2. *Evidence—relevancy of.*—Evidence that the defendant had always lived near the scene of the homicide, which was a secret and unfre-

[Green v. The State.]

quented spot, is relevant as tending to shed light on the question of the defendant's intent in the perpetration of homicide.

3.   *Argument of counsel.*—The credibility of a witness for the State having been assailed by counsel in argument on account of alleged contradictions in her testimony, it is not improper to allow the solicitor to comment on the fact that the defendant failed to prove by another witness who had been examined, the falsity of some of the statements alleged to have been made, and that the defendant attempted to impeach a witness by her own statements.

4.   *Charge opposed to evidence.*—A charge that the evidence in a case of homicide is wholly circumstantial is properly refused, when there is testimony that defendant confessed that he killed the deceased.

5.   *Want of harmony in evidence.*—It is improper to charge the jury that if they find that a witness has made contradictory statements, they must reject his testimony, altogether, since it is the province of the jury to weigh all the evidence.

6.   *Proof necessary to justify conviction* -- In all criminal cases the jury must be convinced beyond a reasonable doubt of the existence of every material element of the offense before they can convict.

7.   *Charge assuming fact.*—A charge which assumes facts "as shown by the evidence," when such supposed facts are controverted and which asserts a proposition inconsistent with any evidence in the case, is an invasion of the province of the jury.

APPEAL from Sumter Circuit Court.

Tried before Hon. SAMUEL H. SPROTT.

Steptoe Green was convicted of murder in the first degree, and the evidence is substantially the same as is shown by the report of the case when before this court on a former appeal.   96 Ala. 29.

The charge given at the instance of the State is set forth in the opinion.   The defendant excepted to the refusal of the court to give the following charges :

(11.) "The court charges the jury that the evidence in this case is purely circumstantial."   (13.) "The evidence in this case is wholly circumstantial.   In order to justify a verdict of guilty of murder in the first degree, the circumstances must be so connected and complete as to exclude to a moral certainty every reasonable hypothesis, but that of the guilt of the accused of murder in the first degree.   If the proof does not come up to this full measure, and the evidence is equally reconcilable with the theory that the defendant is guilty only of murder in the second degree, then the jury should not find the defendant guilty of murder in the first degree."   (16.) "Proof of contradictory statements, declarations, or testimony on material points by the witness, Mary Jane Autrey, may be sufficient to raise a reasonable doubt in the minds of the jury of the truth of the witness' testimony, and, if the jury have such a reasonable doubt of the truth of her testimony, then they should reject her testimony and should not consider it against the defendant in

making up their verdict." (18.) "Proof of contradictory statements, declarations, or testimony on material points by the witness, Emma Marr, may be sufficient to raise a reasonable doubt in the minds of the jury of the truth of witness' testimony, and if the jury have such a reasonable doubt of the truth of her testimony, then they should reject her testimony, and should not consider it against the defendant in making up their verdict."

SMITH, VAN DEGRAFF & TRAVIS, for appellant, insisted that the argument of the solicitor should have been excluded, citing *Clarke v. State*, 5 So. W. Rep. 115; *Cross v. State*, 68 Ala. 484.

W. L. MARTIN, Attorney-General, for the State.

STONE, C. J.—On the tenth day of October, 1892, the Circuit Court of Sumter county being in session, the court made the following orders in reference to the trial of Steptoe Green, the appellant in this case: "Comes J. S. McEachin, solicitor who prosecutes for the State, and the defendant, Steptoe Green, being present in person and by attorneys; and the said defendant having heretofore and at a former term of this court, to-wit: on the 17th day of October, 1891, been arraigned in open court on the indictment in this cause, and he having then and there entered his plea of 'not guilty,' the court now sets Wednesday of the second week of this term of this court, the same being Wednesday, the 19th day of October, 1892, for the trial of this cause; and it is ordered by the court that the names of fifty (50) special jurors be drawn according to law, which names of jurors, together with the names of the petit jurors for the second week of this term of this court, shall constitute the *venire* for the trial of this cause."

Before proceeding to trial, the prisoner, through his counsel, moved to quash the venire served upon him for his trial, because the name of M. B. Rosenbush was omitted therefrom. There was nothing in this motion, and the court correctly overruled it. M. B. Rosenbush, though summoned by the sheriff, had not been drawn as one of the jurors for the week in which the trial was ordered to take place, and did take place. Had his name been put on the *venire*, it would have been ground of objection on the part of defendant, if he had sought to avail himself of it. To be a competent and legal juror in such conditions, the person tendered and notice thereof given, must have been drawn as well as sum-

[Green v. The State.]

moned.    M. B. Rosenbush had not been drawn.—Code of
1886, §§ 4306, 4309, 4320, 4322, 4324; *Floyd v. State*, 55 Ala.
61; *Posey v. State*, 73 Ala. 490.    This ruling is not opposed
to the principles declared in *Phillips v. State*, 68 Ala. 469;
*Parsons v. State*, 22 Ala. 50; *Sylvester v. State*, 71 Ala. 17.

Chapman, a witness for the State, was asked the question:
"How long the defendant had lived on the Chapman place?"
He answered; "Steptoe Green had lived on the place all
his life."    The question and answer were separately object-
ed to as calling for irrelevant evidence.    The objections be-
ing severally overruled, the defendant separately excepted.

The place, which the testimony tends to show was the
scene of the killing, was in a dense forest, thickly covered
with undergrowth, and in every way a secret place.    It was
off from and near to the neighborhood road, which the tes-
timony shows deceased and accused were travelling, engaged
at the time in angry altercation.    The place of the homicide
was probably the most obscure and secreted spot of ground
in the immediate neighborhood.    One very important in-
quiry on the trial, as tending to fix the grade of the offense,
if perpetrated, was whether the prisoner had a previously
formed design to take the life of the deceased.    He had trav-
elled some distance with her in the neighborhood road, and
only a short time before reaching the place where the body
was afterwards found, the two, as the testimony tends to
show, entered this dense forest and undergrowth.    This was
in the immediate neighborhood of what is known as the
"Chapman plantation."    The testimony objected to tended
to show the prisoner's knowledge of the country around and
of this unfrequented spot, and was a circumstance of which
the jury might well be informed, so that they could consider
it with the other evidence in answering the inquiry, whether
he chose that spot for the tragedy, rather than the open
roadway, which would much more likely have exposed him
to outside observation.    Probably this testimony was weak;
but we think it a legitimate circumstance for the jury to
weigh in determining the grade of the offense, if they found
the prisoner guilty.

While prosecuting counsel was making the concluding ar-
gument to the jury, two positions were taken by him, to
which defendant, through his counsel, objected separately,
and moved the court to arrest the argument, and exclude
them from the jury.    In the testimony of Emma Marr,
daughter of the deceased, who testified that she was near to,
but not in sight of, the parties at the time of the alleged
homicide, she had stated that she informed Nero Brown of

[Green v. The State.]

the killing shortly after it is alleged to have occurred. Brown had been introduced by the prosecution as a witness on this trial,—but had not been interrogated by defendant as to this statement of the witness Emma Marr. Counsel for the defense had assailed the credibility of Emma Marr, basing the assault, in part, upon the alleged contradictions in the testimony of said witness on her different examinations. Replying to this, the prosecuting counsel, in his said concluding argument, stated to the jury, "that if Emma Marr had not spoken truly, when she said she had told Nero Brown about the killing, counsel for defense could have proven this statement false, as Nero Brown was present at the trial, and on the stand; and   ·   ·   counsel for defendant had not attempted to disprove by him what Emma Marr had said to him on the day of the killing, about the killing." There was nothing in this objection. It was clearly within the realm of legitimate argument to the jury. Even if such line of argument could in any case be objectionable, it was not so as here presented.

The other exception reserved to the line of argument the State's counsel was permitted to pursue arose as follows: The testimony of Emma Marr given on former trials and written down had been adduced in evidence by the defense for the purpose of impeaching her through discrepancies shown between the two statements. These had been produced by the defendant on the cross-examination of this witness. In reply to the assaults made upon the veracity of this witness, based on the alleged discrepancies in her several examinations, counsel for the State, in his said concluding address, "argued to the jury, that if Emma Marr was unreliable, and her testimony was not to be believed, it was strange defendant's counsel relied on her evidence to prove the facts upon which they sought to impeach her as a witness. That defendant's counsel had themselves used her as a witness to prove the facts upon which they sought to impeach her as a witness." It may be that this was an illogical argument; but that of itself is not enough to put the court in error for not arresting it.—*Commercial Fire Ins. Co. v. Allen*, 80 Ala. 571; *Childress v. State*, 86, Ala. 77; *Cross v. State*, 68 Ala. 476.

Charges 11 and 13 were each properly refused, because each asked the court to assert as a fact that the evidence in this case was entirely circumstantial. Emma Marr testified that the defendant had confessed to her that he killed Harriet Marr.

Charges 16 and 18, asked by defendant, are not distin-

[Green v. The State.]

guishable in principle from those we ruled on in *Welsh v. State, ante,* 1, at the present term. We held in that case that the court did not err in refusing the charges there considered; and that ruling justifies the court's ruling on charges 16 and 18 in this case.—3 Brick. Dig. 284, § 523.

### Response to application for rehearing.

Since we announced a decision in this case—February 6, 1893—our attention has been specially directed to the charge given at the instance of the State, and which was excepted to. That charge is in the following language: "If the jury believe from the evidence that the defendant went with Harriet Marr for over one mile, no one with them except themselves, until they reached the spot on the road near the five mile post, as shown by the evidence, and during the time he was going there, or during any portion of the time he was going there, had the intent to kill her there, and did kill her there, the jury are authorized to find him guilty of murder in the first degree."

It will be seen that this charge authorizes the jury to find the defendant guilty of murder in the first degree if they "*believe from the evidence*" certain hypothesized facts. In a criminal prosecution, it is not enough that the jury "believe from the evidence" that the constituents of the offense have been proved. They must be convinced *beyond a reasonable doubt,* of the existence of every material element of the offense, before they are authorized to find a verdict of guilty; and that conviction must be produced by testimony. This rule applies to every species of prosecution known to the criminal calender.—*Childs v. State,* 58 Ala. 349; *McAnnally v. State.* 74 Ala. 9. It is not necessary that we decide the sufficiency or insufficiency of the clause we are now considering. The identical language was employed in the following cases, and we made no comment on it, but, on the contrary, treated the charges as free from error.—*Cagle v. State,* 87 Ala. 38; *Keith v. State,* 91 Ala. 2. See also *Bowdon v. State, Ib.* 61; *People v. Sheldon,* 68 Cal. 434. Possibly the language could only tend to mislead, and, at most, would call for an explanatory charge, if injury was apprehended.—1 Brick. Dig. 344, § 129, and cases cited. It would always be safer to adopt the long established phrase, that to convict of crime, the testimony must convince beyond a reasonable doubt.—*Newton v. State,* 92 Ala. 33.

The charge is objectionable in other respects. The subphrase, "as shown by the evidence," should have been omit-

ted.—*Marble v. Lypes*, 82 Ala. 322; *Joyner v. State*, 78 Ala. 448; *Herges v. State*, 30 Ala. 45. And the last clause of the hypothesis is faulty. It declares that if defendant "during the time he was going there [the place where it is alleged the homicide was committed] or during any portion of the time he was going there, had the intent to kill her [deceased] there, and did kill her there, the jury are authorized to find him guilty of murder in the first degree." The language should have been, and *pursuant to such intent*, did kill her there.

The charge is objectionable in yet another respect. One of its postulates is, "that the defendant went with Harriet Marr for over one mile, no one with them except themselves." All the testimony bearing on this feature of the inquiry was that of Emma Marr. She testified that she was with them during most of this time, and was at no time far from them. To justify the postulate that "no one [was] with them except themselves," would necessarily require that her testimony that she was with them should be disbelieved; and if her testimony be disbelieved, there was an entire absence of proof of any previously formed *intent* to kill the deceased. The hypothesis of a charge should never include as a predicate a proposition which is unsupported by any testimony, or which is inconsistent with any conclusion of fact there is testimony tending to establish, no matter how slight that testimony may be.—*Henderson v. Marx*, 57 Ala. 169; *Cummins v. State*, 58 Ala. 387; *Boddie v. State*, 52 Ala. 395; *Wise v. Falkner*, 51 Ala. 359.

The last mentioned imperfection would probably not call for a reversal, if it stood alone. It was enough, however, to justify the refusal to give a charge otherwise unobjectionable.

Reversed and remanded. Let the prisoner remain in custody until discharged by due course of law.