# Green *v.* The State.

## *Indictment for Murder.*

1. *Constitutional law; local laws.*—The section of the Constitution, (105) which prohibits the Legislature from enacting any special or local law by the partial repeal of a general law, has no application to a local act amendatory of a prior local law.

2. *Same; same; notice.*—Where notice is given that a bill will be introduced in the Legislature, for the purpose of amending an existing local law, in several particulars, which are each separate and distinct in substance, a defect in such notice as to one particular, does not affect the other particulars, wherein the notice was sufficient.

3. *Trial and incidents; charge of court.*—Where on request, the Court gives its general charge in writing, there is no error in allowing the jury to take the same out with them, on retiring to consider their verdict.

4. *Homicide; evidence; character of deceased.*—On a trial for homicide, evidence of the turbulent, bloodthirsty and dangerous character of the deceased is only admissible when there is testimony tending to establish that the accused acted in self-defense; where some overt act on part of deceased is shown,

[Green v. The State.]

calculated to impress his slayer with the reasonable belief
that he is in danger of suffering grievous bodily harm, or
death, and there was no reasonable mode of escape. And
such evidence, when properly admitted, is limited in its con-
sideration by the jury to determining solely the meaning of
his overt act or demonstration. (*Fields v. State, 47 Ala.,*
*overruled.*)

5.  *Same; same; justification.*—Where a defendant on trial for hom-
icidee seeks to justify the killing on the ground of self-de-
fense, it is only incumbent on him, to show, first; that at
the time there was a necessity to take life, or that the cir-
cumstances were such as to create in his mind a reasonable
belief that it was necessary to save life, or to prevent great
bodily harm; second, that there was no reasonable mode of
escape. When these ingredients have been established, the
burden is upon the State to show that he was not free from
fault.

APPEAL from Tuscaloosa County Court.   ·
Tried before Hon. J. J. MAYFIELD.

Jim Green, the appellant in this cause, was tried
upon an indictment, charging him with the murder of
Moach Williamson. He was found guilty of murder in
the second degree.  The proceedings on the selection of
the jury are sufficiently shown by the opinion, and it
is unnecessary to set out the facts and circumstances
of the killing.

On request of counsel, the general charge of the Court
to the jury was given in writing.  The defendant re-
served exceptions to parts of such charge, shown· as
follows : 1st, to a part charging "If a slayer has any time
to think before the act, however short such time may be,
even a single moment, and does think, and then strikes
the blow as a result of an intention to kill produced by
this momentary operation of the mind, and death en-
sues, this would be a deliberate and premeditated kill·
ing within the meaning of our statutes defining murder
in the first degree :" 2nd, to a part as follows: "If a
killing is done with a wickedness or depravity of heart,
towards deceased, and the killing is determined on be-
fore hand and after reflection for however short a time,
it is murder in the first degree :" 3rd, "Evidence of the

turbulent, bloodthirsty and dangerous character of the deceased is competent and proper to enable the jury to determine the degree of the offense, and the character of the punishment:" 4th, "Before the defendant can avail himself of the doctrine of self defense, the jury must believe from the evidence that the defendant was reasonably without fault in bringing on the difficulty; that there must have existed at the time, either really or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, impending and imperious necessity to shoot in order to save his own life, or to save himself from great bodily harm; and there must have been no other reasonable mode of escape by retreating or avoiding the combat with safety:" 5th, "Before the defendant can avail himself of the doctrine of self defense, the jury must believe from the evidence that the defendant was reasonably without fault in bringing on the difficulty."

On written request of the State, the Court gave to the jury the following charges: (1). "Gentlemen of the jury, I charge you that when a defendant sets up self defense in justification or excuse of a killing, the burden of proof is on him to show to the jury by the evidence, that there was a present impending danger, real or apparent, to life or limb, or of grievous bodily harm, from which there was no other probable means of escape." (2). "If the defendant, in this county, and before the finding of this indictment, purposely killed Moach Williamson by shooting him with a pistol, with a wickedness or depravity of heart against said deceased, and the killing was determined on before hand, (for however short a time before the fatal shot was fired, is immaterial) he is guilty of murder in the first degree." (3). "I charge you that, before a jury can acquit the defendant on the ground of self defense, three essential elements must concur: 1st, the defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequence in this respect of any wrongful words or act; 2d, there must have existed at the time, either really, or so apparently as to lead a reasonable mind to the belief that it actually existed, a

present, impending, imperious necessity to shoot, in order to save his own life, or to save himself from great bodily harm; and 3rd, there must have been no other reasonable mode of escape by retreating, or by avoiding the combat with safety." (4). "When it comes to a question whether one man shall flee or another man live, the law demands that the former shall flee rather than the latter shall die." (5). "When one is menaced by an assault, the following inquiries present themselves: 1. Is he free from fault in bringing on the difficulty. 2. Is there reasonable room and ground for escape from injury. 3. Is the threatened assault of such nature that, if perpetrated, it is likely to produce death or great bodily harm. All these considerations enter into and qualify the right to resist with a deadly weapon." (6). "The Court charges the jury that, to make the plea of self defense available, the defendant must be without fault. If he was himself the aggressor, he cannot invoke the doctrine of self defense, even if the deceased struck him, and whether the necessity to take the life of the deceased was real, or only apparent, if brought about by design, connivance or fault of the defendant, he cannot be excused on the plea of self defense." (7). "Murder is frequently committed in sudden encounters, into which the parties enter mutually, in which the party slain strikes the first blow. Murderers sometimes provoke an enemy to strike them, that they may then kill under a supposed protection that the law then gives the slayer. It is supposed only, for in law and in fact, it is most atrocious murder."

The defendant requested, in writing, and the Court refused charges numbered and as follows: (1). "It is not necessary that a man should be actually and really in danger of great bodily harm, or that retreat would actually and really increase his danger, in order for him to be justified in taking the life of his assailant. He has the right to act upon the reasonable appearance of things. If the circumstances are such as to justify a reasonable man in the belief that he is in great danger of bodily harm, and that he cannot retreat without adding to his peril, and he honestly believes that such is the case, then

he has the right to kill his assailant in his own defense, although as a matter of fact, he was in no actual danger, and retreat would not have endangered his personal safety.   (2).  "To justify the defendant in killing Moach Williamson, it is not necessary that he should have been in actual danger of bodily harm; but it is sufficient if the defendant believed, and the circumstances were such as to impress the mind of a reasonably prudent man, that he was in immediate danger of great bodily harm from Williamson, and there was no way open for him to retreat without increasing his peril.   If, at the time of the killing, the defendant was in danger of losing his life, or of suffering great bodily injury at the hands of the deceased, or if the circumstances surrounding the defendant at the time of the killing were such as to create in the mind of a reasonable man the honest belief, and the defendant honestly believed, that he was thus in danger, and if the defendant could not have retreated from the deceased without increasing his peril, then the jury must acquit the defendant ."

Upon the retirement, the presiding judge directed that the jury take with them, the general written charge of the Court.

The defendant was convicted of murder in the second degree, and takes this appeal.

JONES & FITTS, for appellant.

MASSEY WILSON, Attorney General, *contra.*

HARALSON, J.—The defendant moved to quash the venire, because the court ordered one special venire of 50 jurors for the trial of several distinct and capital felonies, including the one against defendant; and because, when this case was called and put upon trial, the names of several of the special venire on the regular panel for the week, as drawn and called, were engaged in the trial of another cause set for trial on that day, and the defendant, against his objection, was required to proceed and select a jury from the remaining jurors without reference to those engaged in the trial of the other case.

If the special Act of the Legislature for Tuscaloosa county, touching the drawing and empanelling of juries in capital cases in the Law and Equity court of that county, is not unconstitutional, as it is contended by the defendant it is, the motions were without merit and properly overruled, since the proceedings had were in accordance with that statute.—Acts of 1893, p. 399; *Rembo v. State,* 134 Ala. 71; *Dorsey v. State,* 107 Ala. 157.

Section 6 of the Act "To establish the Tuscaloosa county Law and Equity court," (Acts 1896-7 p. 262, provides, "That, in the absence of any special jury law for the county of Tuscaloosa, the grand and petit juries for said court shall be drawn and empanelled and sworn in the same manner as is or may be hereafter provided by law in respect to grand and petit juries in the circuit courts of the State. But in case of a special jury case for Tuscaloosa county, the jurors for said court shall be drawn, summoned and empanelled and selected in the manner provided in such special law for said county, provided, however, that the judge of said court may order jurors to be drawn, summoned, empanelled and selected at any time and for any number of days, whenever in the discretion of such judge the public good may so require." This was certainly a local law, and juries were to be drawn and empanelled under it. The fact that it adopted some of the provisions of the general law, providing that such provisions should be applicable unless and until a special jury law for the county should provide otherwise, did not operate to make it any the less a local law. It was local, intended to be such and not otherwise. If not, there was no necessity for the enactment. By Act of Oct. 1, 1903, (Local Acts 1903, 309) this original act was amended in several distinct, separate provisions, including said Sec. 6 of the original law, which was re-enacted in terms as it originally existed, with the following proviso added, which constituted the only amendment of it, "Provided, that for the trial of all capital cases, set for any one week, only one special venire shall be summoned, for the trial of all such capital cases." The general law was different from this, requiring a special venire for each capital case. The relief sought by this

amendment could not be obtained under any general law then existing, or the local law as stated would have been unnecessary. It in no sense, therefore, offends that provision of the Constitution, (§ 105), which prohibits the Legislature from enacting any special or local law by the partial repeal of a general law. The statute is a local one, amendatory of a local, and not of a general law.

The notice as printed in the Senate Journal, p. 931, is, "Notice is hereby given, that a bill will be introduced in the Legislature of Alabama, when it convenes in September, to amend an Act to establish the Tuscaloosa county Law and Equity Court, by amending Section 6, so that only one special venire shall be summoned in one week for the trial of capital cases, by repealing Section 28 as amended by Act approved 15th of February, 1899, so that capital cases can be tried at any time after indictment found; by amending section thirty as amended by Act approved Dec. 13, 1900, so as to limit assistant solicitor's fees to be expended for the employment of assistant counsel to $1,000.00 per annum, and section 25, so as to provide for the appointment of a solicitor for said court by the Governor; also to further amend said Act by adding Section 36, prohibiting justices of the peace from issuing warrants returnable to said court unless the same have been approved by the judge or solicitor of said court. Also to amend Section 27 of said Act so as to fix the salary of the judge of said court at $2,500.00 per annum. To amend Section 3 of said Act so as to provide that the clerk of said Court shall be entitled to same commissions for collection of solicitor's fees in said Court as clerks of circuit courts in the State are now entitled to receive."

Each of these enactments to the various sections of the original Act is separate and distinct, as is urged, from the others,—no one of them being dependent, in any manner, upon that which precedes or follows. Section 6, which contains the alleged obnoxious provisions in respect to having one venire for several capital cases set for the same week, is entirely independent of any other of the six amendments that follow. If the notice of the other amendments is invalid, so as to subject them to

[Green v. The State.]

constitutional infirmity,—a question we deem it unnec-
essary, however, to consider,—the fullness and complete-
ness of the notice as to this particular amendment, un-
der the constitutional requirement, (§ 105) cannot be
and is not questioned. All other amendments may be re-
jected, and we have left the one we consider complete
within itself and capable of enforcement. The error in-
sisted on is, therefore, not available.

There is no error in the parts of the oral charge of the
court, designated as 1 and 2.—*Long v. State,* 84 Ala.
1; *Cleveland v. State,* 86 Ala. 9. Nor was there error in
that part of the oral charge designated as 3.—*Fields v.
State,* 47 Ala. 603, *DeArman v. State,* 71 Ala. 352.

The fourth part of the charge was without fault. The
question of burden of proof was not referred to, and al-
together it was a charge favorable to defendant.—*Nau-
gher v. State,* 105 Ala. 29; *Lewis v. State,* 120 Ala. 341;
*Holmes v. State,* 100 Ala. 80.

The 5th part of the oral charge was too favorable to
defendant. In order to set up self-defense, the defendant
is required to be wholly, and not merely reasonably, with-
out fault.—*Crawford v. State,* 112 Ala. 28.

We have examined the charges given for the State,
and under our former holdings, find no reversible error
in them.

Charges 1 and 2, refused to defendant, each ignores
freedom from fault in bringing on the difficulty.

There was no error in permitting the jury to take with
them on retirement, the written charge of the court,
which was requested by defendant to be reduced to wri-
ting.

Affirmed.

TYSON, DOWDELL, SIMPSON and ANDERSON, J. J. con-
curring.

MCCLELLAN, C. J., and DENSON, J., dissenting as to
the conclusion on the constitutional question.

ON REHEARING.

TYSON, J.—The trial judge in his oral instructions to the jury said to them, among other things, "Evidence of the turbulent, bloodthirsty and dangerous character of the deceased is competent and proper to enable the jury to determine the degree of the offense and the character of the punishment." While confessedly this is a matter of which the accused cannot complain, yet, it is important to the administration of the criminal law that it be corrected. The principle asserted seems to be fully sustained by the cause of *Fields v. State,* 47 Ala. 603. But this cause has been practically overruled, though not *eo nomine,* by numerous decisions of this court rendered subsequently, and is directly in conflict with others rendered prior to it.—*Pritchett v. State,* 22 Ala. 39; *Franklin v. State,* 29 Ala. 14; *Rhea v. State,* 100 Ala. 169, and cases there cited; *Jackson v. State,* 90 Ala. 590; *Winter v. State,* 123 Ala. 1.

The principle deducible from these cases is that evidence of the turbulent, bloodthirsty and dangerous character of the deceased is only admissible when there is testimony tending to establish that the accused acted in self-defense; where some overt act on the part of deceased is shown, calculated to impress his slayer with the reasonable belief that he is in danger of suffering grievous bodily harm or death and there is no reasonable mode of escape, and this for the purpose of determining who was the aggressor. In the absence of such an act on the part of the deceased, his character for turbulence and violence is wholly irrelevant.

It has never been the law in this jurisdiction that, because a man has the reputation of being turbulent and violent, his life may be taken. On the contrary it has been uniformly held that, whatever may be a man's character for desperation and recklessness, he is entitled to the protection of the law; and it is as much a crime in the eye of the law to slay him, as it is the most peaceable and law abiding citizen in the community. Evidence, therefore, of the character of the deceased for violence and the like, when properly admitted, is limited in its

[Calhoun v. The State.]

consideration by the jury to determining solely the meaning of his overt act or demonstration.

The fourth and fifth part of the oral charge, to the effect that, before defendant can avail himself of the doctrine of self-defense, the jury must believe from the evidence that he was without fault, was clearly erroneous. His right to avail himself of this defense is not dependent upon his showing that he was free from fault. Indeed, there is no burden on him to show that he was not at fault. It was only incumbent upon him to show; first, that at the time there was a necessity to take life, or that the circumstances were such as to create in his mind a reasonable belief that it was necessary to save life or to prevent great bodily harm; second, there was no reasonable mode of escape. When these ingredients have been established, the burden is upon the State to show that he was not free from fault.—*Naugher v. State*, 105 Ala. 26.

Reversed and remanded.

McCLELLAN, C. J., DOWDELL, SIMPSON, ANDERSON and DENSON, J. J., concurring.